IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE PERSON OF LANE RYAN BRONSON-ACKERSON | Case No. 20-SW-2151DPR |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

The Affiant, Mark A. Wells, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for the person of Lane Ryan Bronson-Ackerson who is incarcerated at the Jasper County Detention Center located at 405 East 5th Street in Carthage, Jasper County, Missouri. The information to be searched is described in the following paragraphs and in Attachment A, and the things to be seized are more particularly described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI), United States Department of Justice, and as such, I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18 of the United States Code. I have been employed with the FBI since March 14, 2010. Since that time, I have conducted investigations on counter-terrorism matters and criminal matters such as wire fraud, bank fraud, child sexual exploitation, and violations of the Major Crimes Act. I have also attended the FBI Evidence Response Team Basic Course, advanced Evidence Response Team courses, and have participated in the Oklahoma City Division Evidence Response Team since 2015. I have gained experience and knowledge through training and everyday work related to conducting these types of investigations.

3. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, reviews of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open source information including information available on the Internet. Since this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact I or others have learned during the course of this investigation.

4. Based on Affiant's training, experience, and the facts as set forth in this affidavit, there is probable cause to believe the person described in Attachment A contains evidence and instrumentalities of violations of Title 18, United States Code §§ 1151, 1152, and 13, and 21 O.S. § 1161.1 (A)(3) (Desecration of a Human Corpse).

**JURISDICTION**

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

6. On July 15, 2020, the remains of an unknown individual were discovered in Mayes County, Oklahoma, located within the boundaries of the recently determined Creek Nation, which is within the Northern District of Oklahoma. Through my training and experience, and the training and experience of other agents and officers that observed the remains, the cause of death has been determined to likely be the result of homicide. Several deeply impacted injuries around the head

2

and jaw indicated evidence of blunt force trauma as well as other injuries that appeared to be stab wounds to the torso area.

7. Post-mortem examination by the Oklahoma Office of the Chief Medical Examiner determined the identity of the remains through fingerprint analysis, which revealed a match within the Automated Fingerprint Identification System with the fingerprints of Jolene Campbell. A forensic anthropologist with the Medical Examiner's Office noted that the injuries to the decedent's skull were consistent with that of blunt force trauma. After the Medical Examiner's Office identified the decedent as Jolene Campbell, an FBI Special Agent contacted the Osage Nation Certificate Degree of Indian Blood Membership Office in Pawhuska, Oklahoma, and confirmed the decedent Jolene Campbell was a member of the Osage Nation.

8. On July 23, 2020, FBI Special Agents interviewed a confidential informant who has previously provided reliable information on multiple occasions to the Joplin, Missouri, Police Department over the course of eight months. The information resulted in the issuance of two state search warrants, the filing of one indictment in the United States District Court for the Western District of Missouri, and the discovery of a deceased person's body in the Joplin area. During that time, this reliable confidential informant (RCI) has supplied information which has always proven to be factual and which has been corroborated by independent sources and investigative activities.

9. During the interview, the RCI advised that Jolene Campbell was taken from the home of Kyle Dumas located at 2529 9th Street, Joplin, Missouri 64801, while attending a party on July 4, 2020. The RCI provided that Lane Bronson AKA "Lane Ryan Bronson-Ackerson", pulled a gun on Jolene Campbell, forcing her from the residence and into a car. Lane Ackerson, Lane's older half-brother Tre Robert Allen Ackerson, and Anthony Torrence, AKA "Scooter",

placed Jolene Campbell into a car and departed Dumas' residence. These facts were later corroborated through eye-witness interviews of a cooperating witness (CW1), who attended the same party and had direct personal knowledge of these events.

10. CW1 also advised that on July 5, 2020, Tre Ackerson and Lane Ackerson returned to Kyle Dumas' house with Jolene Campbell's clothing and belongings, but without Jolene Campbell. Lane Ackerson was overheard by the cooperating witness to make statements indicating they had "gotten rid of" Jolene Campbell and that Jolene was "not coming back".

11. During the interview, RCI advised that Jolene Campbell was killed in an abandoned house in Joplin, Missouri. On July 28, 2020, RCI contacted case agents to inform them that the house in which Jolene Campbell was killed had been intentionally burned to the ground. This information was corroborated through the Joplin Police Department and an agent with the FBI in Joplin, Missouri, and the Redding's Mill fire Department that an abandoned house located at 4183 Greenwood Drive in Joplin, Missouri, that was likely the scene of multiple homicides including Jolene Campbell's, had indeed been intentionally burned by persons unknown. A subsequent interview of CW1, who had personal knowledge of the suspects and events related to the death of Jolene Campbell, corroborated RCI's statements that the abandoned house where Jolene Campbell was killed had been intentionally burned down in order to prevent law enforcement from obtaining evidence from that crime scene.

12. During the interview, RCI explained that the remains found in Oklahoma were of Jolene Campbell and were transported from Joplin, Missouri, to Oklahoma in a "minivan" driven by Tre Ackerson, Lane Ackerson, and Chloe Louise Stith. The RCI advised that the group transported the remains of Jolene Campbell to the location in Mayes County, Oklahoma, on an

4

unspecified date sometime between July 5, 2020, when Jolene Campbell was likely killed, and July 15, 2020, when her remains were discovered. The RCI explained that Jolene Campbell's body was initially hidden at the abandoned house in Joplin, but Tre and Lane Ackerson decided to move it because they were involved in another shooting in that area and did not want the body to be discovered. At the time the RCI identified the remains as belonging to Jolene Campbell, FBI Special Agents had not informed the RCI of that fact. Local law enforcement in Joplin told me that both Tre Ackerson and Lane Ackerson are associated with the Irish Mob Gang in the Joplin area and that the Irish Mob Gang in that area engage in violent crimes such as murder. I have no information indicating that the Tre and Lane Ackerson are members of any Indian Tribe or have any degree of Indian blood.

13. During the interview with CW1, CW1 advised that Tre Ackerson, Lane Ackerson, and Chloe Stith were at a trailer on Angus Road where the Ackerson brothers sometimes stayed on an occasion when CW1 was present. CW1 overheard the three talking in coded language intended to disguise the context of their conversation. CW1 advised that CW1 overheard statements indicating they "needed to move her" and using a "black tarp and electrical tape" to do so, late one evening. CW1 understood this conversation to be related to Jolene Campbell despite their intent to use vague expressions and coded language. On that same evening, CW1 told law enforcement that a green minivan was observed in the driveway, and that the green minivan was almost certainly used to transport the remains of Jolene Campbell to Oklahoma soon thereafter by Tre Ackerson, Lane Ackerson, and Chloe Stith.

14. According to the RCI, an individual known as "B" Sloan was in a relationship with Tre Ackerson, a fact that was later corroborated independently via inmate messaging from the

Jasper County, Missouri, Sheriff's Office between Tre Ackerson and Breanna Sloan. The following are excerpts of the messaging referenced above that occurred between Breanna Sloan using the email address beemfnsloan@gmail.com and Tre Ackerson using the email address 169950@jasper.mp.inmatecanteen.com on August 1, 2020:

- Breanna Sloan at approximately 1:29 p.m., "I cant add phone time someone took my card but I'm trying. I miss your voice";

- Tre Ackerson at approximately 1:39 p.m., "Okay ill call you tomorrow who took your cards? Anyways i need more pictures lmao love you girl ps iknowyou wantthe hammer lmfao Tell my bros i love em 100";

- Breanna Sloan at approximately 1:51 p.m., "Duh I want it lol but babeeeee I miss u and Jason said he love u bro and don't forget u too < u and Jason said he love u bro and don't forget u too < 3 miss u so much and I wish I could be cuddled up somewhere with ur toothless ass";

- Tre Ackerson at approximately 1:59 p.m., "Jason? And okay I need my back rubbed 1000 who took your cards?????";

- Breanna Sloan at approximately 2:12 p.m., "Ill rub youre back, if you will sit the fuck down long enough lol and ya Russel and juice and Denzel took my cards and 300 bucks from me", and

- Breanna Sloan at approximately 10:05 p.m., "Ill rub your back, if you will sit down long enough for me to lol your always on the move…first thing first tho, if i can get my hands on you its going downnn lol first im gonna hug you so tight you might pop, then were gonna fight for you being a dick to me lmao, then we can make up (; I miss you so much babe…Anyways i love you and i miss you so much, sweet dreams".

The following are excerpts of messaging in the same manner from Breanna Sloan to Tre Ackerson on August 2, 2020:

- Breanna Sloan at approximately 12:05 a.m., "Keep ya head up" with pictures of her, and

6

- Breanna Sloan at approximately 12:50 a.m., "Love u bro, see u soon!!" with pictures of Tre Ackerson, and Lane Ackerson. The pictures show Tre Ackerson smiling and revealing missing teeth.

15. Additionally, the RCI provided cellular telephone numbers for Chloe Stith and Kyle Dumas. According to the RCI, Kyle Dumas is another person associated with Tre and Lane Ackerson, Breanna Sloan, and Chloe Stith. The RCI advised that Kyle Dumas was involved in the sale of methamphetamine and is also affiliated with the Irish Mob gang and the Joplin Honkies local prison gang. The RCI reported that Kyle Dumas's house may have been the location from which Jolene Campbell was initially taken. Reports from the Joplin Police Department and the Jasper County Sheriff's Office corroborated the telephone numbers as belonging to Chloe Stith and Kyle Dumas.

16. During the July 23, 2020 interview, the RCI advised that after the remains of Jolene Campbell were transported to Oklahoma in the minivan, "B" Sloan was arrested while driving that same minivan in Joplin, Missouri. The RCI advised that arresting officers impounded the minivan and that the minivan was still impounded as of the date of the interview.

17. The Jasper County Sheriff's Office confirmed that Breanna Lynn Sloan was stopped in Joplin, Missouri, on July 17, 2020, while operating a green 2003 Toyota Sienna [VIN 4T3ZF13C53U555592] and was arrested for the crime of Stealing. This arrest record further corroborated the RCI's information. Incident to Breanna Sloan's arrest, the Jasper County Sheriff's Office impounded the vehicle described, and Comer's Wrecker Service towed the vehicle to its service garage located at 1204 South Illinois Avenue, Joplin, Missouri 64801, consistent with the RCI's information.

18. On July 25, 2020, I went to Comer's Wrecker Service garage and identified the vehicle. In plain view from the outside of the vehicle, I observed several bags of clothing, a curling iron, a hair straightener, an aluminum baseball bat, and a document bearing the name "Chloe Stith," which corroborated RCI's statement that Chloe Stith was connected to the vehicle. Because of the tint of the vehicle, I could not determine what the document was, but I could clearly see the name of "Chloe Stith" on the document. Detective Lawrence Bannon of the Muscogee Creek Nation Lighthorse, Oklahoma Police also observed the name "Chloe Stith" on the document. Through my investigation, I learned that Jolene Campbell was transient and that she was known to move around and stay, or "couch surf," with various people. Based on my experience and training, the presence of the bags of clothing, curling iron, and hair straightener were consistent with belongings of someone who was transient. Based on my experience and training, the presence of the baseball bat was consistent with the type of blunt instrument that could have caused the injuries to Jolene Campbell's skull.

19. Based upon the RCI's information, the additional corroboration of the RCI, the observation of the document connecting Chloe Stith to the minivan, and pursuant to the automobile exception, FBI Special Agents used a Human Remains Detection Canine to search the interior of the vehicle on the same date of July 25, 2020. Although the Canine did not alert on any part of the vehicle, I know there are factors that affect a canine's ability to detect odor, including if human remains are wrapped in some type of impermeable layer when being transported that would prevent any part of the remains from coming into contact with the vehicle or if the remains were transported before the advanced stages of decomposition. Based on my experience and training, I believed there was probable cause that evidence of the crime may nonetheless been present in the vehicle because of the RCI's statements which were corroborated by Jasper County Sheriff's Office

8

records, the presence of a document within the minivan containing Chloe Stith's name, and other information described in this affidavit which corroborates the RCI's statements.

20. Instead of conducting a more extensive warrantless search pursuant to the automobile exception, I made the decision to take the additional precaution of seeking a search warrant in order to best protect the integrity of the investigation. Based upon probable cause that the green 2003 Toyota Sienna [VIN 4T3ZF13C53U555592] was used to transport the remains of Jolene Campbell found in Mayes County, Oklahoma, I sealed it using plastic wrapping to preserve any evidence. I then had the vehicle transported to the Oklahoma City Division of the FBI to secure it and maintain the integrity of the potential search site while we prepared to apply for a search warrant to facilitate forensic examination of the van, as well as a more extensive visual examination. For example, based on my experience and training, I know that even if blood is wiped or cleaned from surfaces, blood can nevertheless be detected later using several different forensic methods, including an alternate light source or exposure to certain chemical compounds. This can be true even if blood residue cannot be seen with the naked eye. Specifically, I wanted to seal the van and store it in a secure location that would enable us to protect any evidence from being tampered with while we sought a search warrant and to protect any evidence from being degraded through exposure to heat and sunlight.

21. During the course of this investigation, I have learned through interviews with the RCI and three other confidential informants who have testified about this investigation, that suspects Tre Robert Allen Ackerson, Lane Ryan Bronson-Ackerson, Breanna Lynn Sloan, and Chloe Louise Stith all use cellular telephones to communicate by text message, phone conversations, a wi-fi messaging application called "Textnow", and Facebook Messenger. The

9

Case 6:20-sw-02151-DPR   Document 1-1   Filed 11/02/20   Page 9 of 11

RCI and the other three confidential informants have communicated with the suspects as well as other individuals not named who may have some knowledge about this investigation, through cellular telephones by text message, phone conversations, a wi-fi messaging application called "Textnow", and Facebook Messenger. Through personally listening to hours of recorded telephone calls provided by Jasper County Detention Center, I have been able to corroborate the cellular telephone numbers that were provided during interviews as well as references to communicating by cellular telephones, text message, "Textnow" numbers, and Facebook Messenger.

22. On August 14, 2020, a search warrant was executed on the green 2003 Toyota Sienna [VIN 4T3ZF13C53U555592] in the Western District of Oklahoma. Among the items seized during that search included several knives, a baseball bat, an icepick, multiple cellular telephones, and other items that have a strong likelihood of containing deoxyribonucleic acid (DNA) of the victim and/or perpetrator(s) in this case. The evidence has been sent to the Federal Bureau of Investigation Laboratory Division for analysis.

23. Lane Ryan Bronson-Ackerson is currently incarcerated at the Jasper County Detention Center within the Western District of Missouri.

**EVIDENCE OF CRIMINAL CONDUCT UNDER INVESTIGATION**

24. As explained herein, DNA evidence may provide crucial evidence of the "who, what, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the presence of DNA by either perpetrator, victim, or both perpetrator and victim on an item can indicate who has used or possessed the item in question and how it was used. This "user attribution" evidence is analogous to the search for "indicia of

10

occupancy" while executing a search warrant at a residence. For example, the presence of DNA on the handle of a knife may indicate who used or handled the knife while the presence of victim DNA on the blade may indicate that the knife was used in an attack where a victim was injured.

25. Based on my training and experience, I know that DNA can often be found on items handled by perpetrators of violent crime through skin cells, saliva, blood, or other bodily fluids depending on how the item was used. I also know that in order to prove or to disprove an individual's involvement in a violent crime such as homicide, a known DNA sample must be used for comparison to DNA extracted from items of evidence.

## CONCLUSION

26. Based on the forgoing, I respectfully submit that there is probable cause to believe the person described in Attachment A contains evidence of violations of Title 18, United States Code §§ 1151, 1152, and 13, and 21 O.S. § 1161.1 (A)(3) (Desecration of a Human Corpse) and that evidence of these offenses, more fully described in Attachment B, are located on the person described in Attachment A. I respectfully request that this Court issue a search warrant for the person described in Attachment A, authorizing the seizure and search of the items described in Attachment B.

Respectfully submitted,

_____
Mark A. Wells
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to me in my presence telephonically, this  2nd  day of November, 2020, in the Western District of Missouri.

_____
DAVID P. RUSH
CHIEF UNITED STATES MAGISTRATE JUDGE

11